CONSTITUTION BANK AND TRUST COMPANY *v.* BERTRAM ROBINSON, TRUSTEE, MAR-BAR REALTY TRUST, ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and HEALEY, Js.

Argued October 11—decision released November 13, 1979

*Richard C. Jacobson,* for the appellant (named defendant).

*Richard C. Robinson,* with whom, on the brief, was *Joseph D. Hurwitz,* for the appellee (plaintiff).

PETERS, J. This case concerns the foreclosure of a mortgage given as security for a promissory note containing a variable interest rate. The plaintiff Constitution Bank and Trust Company brought an action for damages, strict foreclosure, possession of the mortgaged premises, reasonable attorney's fees and a deficiency judgment against the defendant Bertram Robinson, trustee of the Mar-Bar Realty Trust, and against two other defendants.[1] The plaintiff moved successfully for summary judgment on the issue of liability, and, after further proceedings in the trial court, a judgment was rendered in its behalf for strict foreclosure and for attorney's fees in the amount of $10,000. The defendant has taken a timely appeal contesting: (1) the enforceability of the note and mortgage; (2) the propriety of the order of strict foreclosure rather than foreclosure by sale; and (3) the justification for the calculation of attorney's fees.

---

[1] The other defendants are junior lienors who have not appealed from default judgments rendered against them.

The underlying facts are not in dispute, and establish that the defendant Robinson, as trustee for the Mar-Bar Realty Trust, executed, on April 23, 1975, a promissory note in the amount of $200,000, secured by a mortgage on real property in Enfield. The note became due two years later and is concededly in default, only $5000 in principal amount ever having been repaid. The mortgage conveyed an interest in property subject to an outstanding long-term commercial lease with an option to purchase; the present value of the mortgaged property depends upon appraisals of the value of the stream of income produced by the lease and the value of the reversionary interest upon the termination of the lease.

The defendant's principal argument on this appeal is that the promissory note and the mortgage that secures it are unenforceable because the note calls for interest in terms so vague as to make the whole note uncertain, indefinite and void. The note stipulates that "[i]nterest on the unpaid principal balance shall accrue from the date hereof and shall be payable for each calendar quarter on the last day of such calendar quarter with the first payment due June 30, 1975. Each payment of interest shall be at a per annum rate or rates equal to one and one-half (1-½) per cent over the prime rate of the payee in effect from time to time during such calendar quarter. On default or after maturity, interest as hereinbefore provided or at the rate of fifteen (15) per cent per year, whichever is higher, shall be payable hereunder."

Whatever the defects, if any, in the articulation of the interest rate in the note before us, we should take note of the draconian remedy that the defend-

ant is seeking to invoke. The defendant, ignoring the fact that he has since 1975 enjoyed the use of the principal sum that was borrowed, of which he still owes $195,000 totally apart from the contested interest, would have us declare the whole transaction so lacking in mutuality, so illusory, as to avoid any liability whatsoever. That is a misreading of the law of contracts. Even contracts considerably more executory than the present contract, even contracts with substantial unilateral rights of cancellation or of termination, are not totally void for lack of mutuality once there has been some performance that makes up for possible defects in the consideration. See *Gurfein* v. *Werbelovsky*, 97 Conn. 703, 706, 118 A. 32 (1922); cf. *Sylvan Crest Sand & Gravel Co.* v. *United States*, 150 F.2d 642 (2d Cir. 1945); 1A Corbin, Contracts §§ 162, 163 (1963). The note and mortgage are therefore at least enforceable in the amount of the unpaid principal and the stipulated post-maturity interest of 15 percent.

The defendant's attack on the variable interest rate is equally unpersuasive. Variable interest rates are a device to allow borrowers and lenders to accommodate to fluctuations in the cost of money. Long-term lending could accommodate to these fluctuations without a variable interest rate if the parties employed an arrangement of revolving credit, in which short-term or demand instruments were at regular intervals replaced by new notes at then current interest rates. Such an arrangement would involve no indefiniteness or uncertainty but would entail substantial transaction costs. Without some form of accommodation to fluctuating monetary costs, banking institutions would be hard

pressed to respond competitively to the problems created by disintermediation during periods of tight money.[2]

This court has had several occasions to consider and to affirm the enforceability of monetary obligations bearing a variable form of interest rate. In *Associated East Mortgage Co.* v. *Highland Park, Inc.*, 172 Conn. 395, 374 A.2d 1070 (1977), the note and mortgage stipulated that interest was to be paid at the rate of either 8 ½ percent per year or 3 percent per year above the "prime rate" as determined by the Chase Manhattan Bank, New York, New York, whichever was greater. This court concluded (pp. 406–407) that the Chase's prime rate was determinable by telephonic inquiry or on the basis of published lists and was therefore sufficiently definite. In *State National Bank* v. *Dick*, 164 Conn. 523, 525, 325 A.2d 235 (1973), the mortgage commitment was for a demand loan with "interest at '½% above our prime, which rate shall be adjusted from time to time based upon any fluctuation in the rate.'" In litigation between the immediate parties, this court decided (p. 530) that the mortgage was enforceable if there was a clear understanding that the interest rate would float,

---

[2] Disintermediation has been defined as "the process whereby financial intermediaries in general, or some classes of them, experience a net outflow of funds to capital suppliers. Ordinarily, the term connotes removal by capital suppliers of funds from financial intermediaries for the direct purchase of stock, bonds, government securities, mortgages, and other financial assets issued by ultimate investors (those who invest in real assets). Disintermediation typically occurs when the rate of return on directly held financial assets exceeds the rate of return paid by intermediaries by more than a normal margin." Clark, The Soundness of Financial Intermediaries, 86 Yale L.J. 1, 37, n.106 (1976); Comment, Variable Rate Mortgages: The Transition Phase, 61 Marquette L. Rev. 140, 141–43 (1977).

even though neither note nor mortgage expressly mentioned this fact. The essential characteristic that distinguishes enforceable from unenforceable variable interest rates is the extent of discretion retained by the lender. If the lender may arbitrarily adjust the interest rate without any standard whatsoever, with regard to this borrower alone, then the note is too indefinite as to interest. If however the power to vary the interest rate is limited by the marketplace and requires periodic redetermination, in good faith and in the ordinary course of business, of the price to be charged to *all* of the bank's customers similarly situated, then the note is not too indefinite. Cf. *Moon Motor Car Co. of New York* v. *Moon Motor Car Co.*, 29 F.2d 3, 4–5 (2d Cir. 1928); 1 Corbin, Contracts § 98, esp. at 435–39 (1963); Uniform Commercial Code, § 2-305; General Statutes § 42a-2-305.

The note presently before us meets the test of enforceability. The uncontested affidavit of the plaintiff's assistant treasurer that accompanied the motion for summary judgment affirmed that the plaintiff had a single prime rate that was set with reference to general money market conditions, openly available to any inquirer, and uniformly applicable to all affected borrowers. This uniform variable rate was applied to the defendant's loan and was, without protest, paid by the defendant until his default on the principal obligation. The defendant has made no claim of unconscionability or of inadequate disclosure. In the absence of any specific allegation of any genuine issue of material fact, the trial court was therefore not in error in granting the plaintiff's motion for summary judgment that the note and mortgage deed were unambiguous and enforceable.

The remaining grounds for appeal concern two matters both of which rest in the sound discretion of the trial court. Since the defendant has not challenged the underlying findings of fact, which in both cases amply support the trial court's conclusion of law, there is no basis for us to conclude that there has been an abuse of discretion.

The defendant challenges the trial court's conclusion that foreclosure should take the form of strict foreclosure, with a long law day, rather than foreclosure by sale. The trial court found that valuation of the mortgaged property was complicated by the existence of a long-term lease which contained an option in favor of the lessee to purchase the leased premises at any time after the fifteenth year of the lease. The interest of the defendant borrower in the mortgaged property was only a half interest, not an undivided interest, in the value of the income stream and the reversion in the subject property. The defendant's own expert was of the opinion that it would take at least one or maybe two full years to effect a sale. These findings support the trial court's conclusion that the substantial differences in valuation in the testimony of the plaintiff's and the defendant's appraisers, with the resultant concern about protection of both parties' interests, warranted a judgment of strict foreclosure. Since it is well settled that whether a mortgage is to be foreclosed by sale or by strict foreclosure is a matter within the sound discretion of the trial court; *City Savings Bank* v. *Lawler,* 163 Conn. 149, 155, 302 A.2d 252 (1972); *Hartford Federal Savings & Loan Assn.* v. *Lenczyk,* 153 Conn. 457, 463, 217 A.2d 694 (1966); *Bradford Realty Corporation* v. *Beetz,* 108 Conn. 26, 31, 142 A. 395 (1928); General Statutes § 49-24; there is no error.

The defendant's objection to the award of attorney's fees in the amount of $10,000 is similarly unavailing. The trial court found that there had been extensive negotiations and judicial proceedings involving both legal research and analysis of complex appraisal reports. The mortgage note expressly promised reimbursement for reasonable attorney's fees incurred in any foreclosure or other legal proceeding for collection of the debt. Under these circumstances, the trial court's award was well within its discretion.

There is no error.

In this opinion the other judges concurred.