## AMERICAN BANK OF CONNECTICUT *v.* THE EAGLE CONSTRUCTION COMPANY ET AL.
### (4872)

BORDEN, SPALLONE and BIELUCH, Js.

Argued February 4—decision released March 24, 1987

*Joseph Glass,* for the appellant (defendant Country Lumber, Inc.).

*W. Fielding Secor,* for the appellee (plaintiff).

BORDEN, J. This appeal involves the issue of a mortgagee's priority, as against a subsequent encumbrancer, of a present advance made by the mortgagee in connection with an open-end construction mortgage which was in conformity with General Statutes § 49-3. The

trial court held that the present advance was entitled to priority over the subsequent encumbrancer, which appealed from that determination. We find no error.

The facts are undisputed. Prior to February 13, 1981, the plaintiff held a blanket mortgage in the amount of $300,000 on property owned by the named defendant, The Eagle Construction Company (Eagle). This blanket mortgage included a certain lot known as Lot No. 18, located in Orange. On February 13, 1981, the plaintiff advanced $36,000 to Eagle. Of that advance, $30,000 was used to reduce Eagle's $300,000 indebtedness to the plaintiff. In connection with that transaction, the plaintiff released Lot No. 18 from the blanket mortgage, and Eagle executed a new note in the amount of $100,000, and a mortgage deed to Lot No. 18 to secure that note. The mortgage deed was labeled "Open-End Mortgage Deed (Construction)," and contained the precise language required by General Statutes § 49-3 (a) (1).[1]

---

[1] General Statutes § 49-3 provides in pertinent part: "(a) Any mortgage to secure future advancements of money for construction or repair of buildings or improvements on land in this state, including site improvements of every kind with or without the construction or repair of any buildings, is sufficiently definite and certain and valid to secure all money actually advanced under and in accordance with its provisions, up to but not exceeding the amount of the full loan therein authorized, with the same priority as if it had been advanced at the time the mortgage was delivered, (1) if the mortgage contains a description of the loan in substantially the following form: 'Whereas buildings or improvements on said premises are in process of construction or repair, or to be erected or repaired; and whereas the said grantee has agreed to make the loan herein described to be paid over to said grantor in instalments as the work progresses, the time and amount of each advancement to be at the sole discretion and upon the estimate of said grantee, so that when all of the work on said premises shall have been completed to the satisfaction of said grantee, said grantee shall then pay over to said grantor any balance necessary to complete the full loan of $. . . . ; and whereas the grantor agrees to complete the erection or repair of said buildings to the satisfaction of said grantee within a reasonable time from the date hereof or at the latest on or before . . . . months from this date,' or (2) whenever one or more advances are to be made when a certain event or condition occurs, if The mortgage contains the pertinent portions of the above clause, and such additional clauses as shall set forth

It did not, however, specifically indicate that any sums, namely the $36,000, were advanced to Eagle by the plaintiff at the time of the mortgage transaction. This mortgage deed was properly recorded. Thereafter, between March 11, 1981, and December 23, 1982, the plaintiff made future advances in the total amount of $58,510.50 to Eagle, pursuant to the construction mortgage, for purposes of constructing a residence on Lot No. 18. The total amount of the plaintiff's advances to Eagle pursuant to the construction mortgage was, therefore, $94,910.50.

Meanwhile, on July 6, 1982, Eagle gave the defendant, Country Lumber, Inc. (Country), a mortgage on Lot No. 18 and on other property of Eagle, in the amount of $42,560. This mortgage was to secure a delinquent indebtedness from Eagle to Country for labor and materials supplied to Lot No. 18 and other property of Eagle, and was recorded on July 12, 1982.

Thereafter, Eagle defaulted on the note of February 13, 1981, to the plaintiff. The plaintiff initiated this foreclosure action. Country raised the special defense that, pursuant to General Statutes § 49-3, the plaintiff cannot as against Country claim the initial advance as part of its debt. The parties stipulated to all the facts in the trial court, and requested the court to determine the validity of the inital advance as between the plaintiff and Country.[2] The trial court ruled in favor of the

with reasonable certainty and accuracy the particular sums which are to be advanced and the event or condition which determines when such sums are to be advanced to the grantor. A mortgage that otherwise complies with subdivision (1) of this subsection shall be valid notwithstanding any provision in any other agreement between the mortgagee and mortgagor that sets forth either particular sums which are to be advanced or the event or condition which determines when such sums are to be advanced, or both, whether or not such other agreement is recorded on the land records. Nothing herein invalidates any mortgage which would be valid without this subsection."

[2] Country limited its claim in the trial court to the invalidity of $30,000 of the initial advance. The balance of the advance was for normal fees incurred in connection with the mortgage.

plaintiff that its initial advance was entitled to priority over Country's mortgage, pursuant to General Statutes § 49-3. Country appealed.

We first consider the question of whether Country appealed from a final judgment of the trial court. This court sua sponte raised this issue at the time of oral argument. This issue arises out of the following unusual procedural context.

While this foreclosure action was pending in the trial court, the plaintiff, Eagle and Country entered into a stipulation that Lot No. 18 would be sold by private sale to a buyer who had agreed to buy the property for $130,000. In connection with that sale, the plaintiff's mortgage indebtedness would be paid in full and its mortgage and lis pendens would be released, except that the plaintiff and Country would continue to litigate the issue of the priority of the plaintiff's initial advance of $30,000. If it was adjudicated that the plaintiff did not have priority as to the $30,000, it would pay Country $30,000 plus specified interest.

In connection with this stipulation, Country moved in the trial court for approval of this private sale. In its motion, Country represented to the court that the plaintiff had obtained an appraisal of the property in the amount of $130,000, that a buyer had been obtained who had signed a contract and given a 10 percent deposit, and that all of the defendants[3] had agreed to the private sale. The court granted this motion, and ordered that the property be sold privately for $130,000 and that the claims of the parties "be reduced to the fund from the sale." The ultimate outcome of this process was that the plaintiff and Country, which are the only remaining parties in interest, are now litigating their right to the fund of $30,000 which has been substituted for the property.

---

[3] There were, in addition to Eagle and Country, five other defendants which were encumbrancers subsequent to Country.

After the sale, and after the court's ruling on the plaintiff's and Country's competing claims regarding the priority of the plaintiff's initial advance, Country moved for judgment to be rendered in favor of the plaintiff. Although it was not specifically stated, it was implied that the motion was made so that Country could obtain a final judgment from which to appeal, and thus challenge the propriety of the trial court's ruling on the merits of the controversy between the plaintiff and Country. The trial court denied this motion without opinion. Country thereafter moved for reargument of its motion for judgment, this time making explicit that it was doing so for the purpose of taking an appeal. Again, the trial court denied the motion without opinion. Thereafter Country filed this appeal.

Ordinarily, the lack of a judgment of foreclosure rendered by the trial court would defeat the appellate jurisdiction of this court. See *Hartford National Bank & Trust Co.* v. *Tucker,* 195 Conn. 218, 223, 487 A.2d 528, cert. denied, 474 U.S. 845, 106 S. Ct. 135, 88 L. Ed. 2d 111 (1985). The peculiar procedural posture of this case, however, leads us to conclude that the order of the court determining the priorities between the plaintiff and Country was final for purposes of this appeal. By arranging for the private sale and obtaining the court's approval therefor, the parties avoided the expense and delay of a foreclosure by sale. Thus, they furthered the judicial policy of avoiding unnecessary economic waste. See *Spera* v. *Audiotape Corporation,* 1 Conn. App. 629, 633, 474 A.2d 481 (1984). They shifted their claims from the property to the fund of money which resulted from its sale. They then sought a final judgment from the court in accordance with its prior ruling of law.

We can perceive no reason why the trial court twice denied their request for this judgment. It is true that the parties should then have requested an order to com-

plete the record under Practice Book § 4183 (1) (formerly § 3096) or moved for articulation of the basis of the trial court's denial of the motion for judgment; Practice Book § 4051 (formerly § 3082); and thereafter, moved for review in this court. Practice Book § 4053 (formerly § 3107); *Jazlowiecki* v. *Cyr,* 4 Conn. App. 76, 79, 492 A.2d 516 (1985). Had they done so, we would have ordered the trial court to render judgment. Under these circumstances, however, we deem the failure of the parties to do so more a matter of form than of substance. It is akin to the failure of the trial court, having made a final order, to prepare a judgment file. See *Lehto* v. *Sproul,* 9 Conn. App. 441, 445, 519 A.2d 1214 (1987). Thus, we conclude that under these particular facts the court's actions have so concluded the rights of Country that further proceedings cannot affect them. Cf. *Melia* v. *Hartford Fire Ins. Co.,* 202 Conn. 252, 256, 520 A.2d 605 (1987).

We therefore turn to the merits of Country's appeal. Country claims that, pursuant to General Statutes § 49-3, the plaintiff is not entitled to claim the initial advance as part of its debt because the mortgage did not disclose the true purpose of that advance and because General Statutes § 49-3 requires that all funds advanced under a construction mortgage must be used for improvements on the lot described on the mortgage. We disagree.

First, the language of General Statutes § 49-3 belies Country's argument. General Statutes § 49-3 addresses the validity of mortgages "to secure future advancements of money for construction or repair of buildings or improvements on land in this state, including site improvements . . . ." It provides that, if such a mortgage contains the terms set forth in either subsection (1) or (2); see footnote 1, supra; it "is sufficiently definite and certain and valid to secure all money actually advanced under and in accordance with its provisions,

up to but not exceeding the amount of the full loan therein authorized, *with the same priority as if it had been advanced at the time the mortgage was delivered . . . .*" (Emphasis added.) The emphasized language makes clear that advances made at the time of the mortgage retain their priority. They are not future advances, which are in need of the statute's protection. They constitute a present advance, which needs no special statutory protection. See *Sadd* v. *Heim,* 143 Conn. 582, 587–88, 124 A.2d 522 (1956). Country's argument would render this statutory language meaningless. See *State* v. *Kluttz,* 9 Conn. App. 686, 694, 521 A.2d 178 (1987).

Second, it is apparent that a principal purpose of the statute is to provide an easy and definite mechanism for construction mortgages, and thus to avoid the necessity of reciting in the mortgage deed all the specific details of the construction progress payments contemplated by the mortgagor and mortgagee. By employing this statute, the parties can avoid any question as to the validity of future construction advances such as the court found in the case of *Matz* v. *Arick,* 76 Conn. 388, 56 A. 630 (1904). In *Matz,* our Supreme Court ruled that future advances for construction to which the mortgage did not refer were not entitled to priority over a subsequent encumbrancer. It also ruled, however, that the present advance made at the time of the mortgage was entitled to such priority. Id., 391; see also *Sadd* v. *Heim,* supra.

Third, Country's argument would also deny priority to an advance made at the time of the mortgage in order to purchase the lot involved. We do not believe that the legislature intended such a bizarre result. *State* v. *Chiarizio,* 8 Conn. App. 673, 688, 514 A.2d 370, cert. denied, 201 Conn. 809, 515 A.2d 379 (1986). Indeed, in this case the initial advance, which was used not to

purchase the lot but to free it of a prior lien and thus to make it available for improvement, is from an economic standpoint equivalent to an advance for purposes of purchase of the lot.

There is no error.

In this opinion the other judges concurred.