THE FIDELITY TRUST COMPANY *v.* BETTY IRICK ET AL.
(4742)

BORDEN, DALY and BIELUCH, Js.

Argued January 6—decision released May 19, 1987

*Robert A. Nagy,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellant (state).

*James Dalton Murphy,* for the appellee (plaintiff).

BORDEN, J. The state of Connecticut, a defendant in this foreclosure action, appeals from the judgment of strict foreclosure rendered by the trial court. The state claims that the court abused its discretion by refusing to order a foreclosure by sale. We find no error.

The following facts are undisputed. The plaintiff commenced this action to foreclose its first mortgage on residential real estate owned by the named defendant, Betty Irick. The amount of the plaintiff's mortgage debt, including costs and fees, was approximately $74,600. The state was named as a defendant by virtue of its second mortgage held by the state department of income maintenance to secure grants of public assistance. The amount of the state's mortgage debt was approximately $25,000. The plaintiff also named itself as a defendant by virtue of an attachment in the amount of $12,000 which it had filed against the sub-

ject property arising from another debt due to it from the named defendant. This attachment was subsequent in right to the second mortgage held by the state. In addition, there were unpaid real estate taxes on the property in the approximate amount of $5000. The total amount of the liens against the property, therefore, was approximately $116,600.

After all of the defendants were defaulted, the plaintiff moved for judgment, and the state moved for a foreclosure by sale. At the hearing, the plaintiff's appraiser valued the property at $96,750. The state does not challenge that valuation. The expenses estimated for a foreclosure by sale were $7000. The court denied the state's motion for foreclosure by sale and rendered a judgment of strict foreclosure. The state thereafter moved to open the judgment, again seeking a foreclosure by sale. The court denied the state's motion. This appeal followed.

The state claims that the court abused its discretion in denying the motions for foreclosure by sale. The gist of the state's argument is that, regardless of whether the total liens and estimated expenses of a sale exceed the value of the property, it is manifestly unjust for a first mortgagor to acquire property by strict foreclosure where the value of the property substantially exceeds the amount of the first mortgage debt, and where a sale is sought by a subsequent lienor who would realize something towards its debt from a sale. We disagree.

"In Connecticut, the law is well settled that whether a mortgage is to be foreclosed by sale or by strict foreclosure is a matter within the sound discretion of the trial court. General Statutes § 49-24; *City Savings Bank* v. *Lawler,* 163 Conn. 149, 155, 302 A.2d 252 (1972); *Hartford Federal Savings & Loan Assn.* v. *Lenczyk,* 153 Conn. 457, 463, 217 A.2d 694 (1966). 'The fore-

closure of a mortgage by sale is not a matter of right, but rests in the discretion of the court before which the foreclosure proceedings are pending.' *Bradford Realty Corporation* v. *Beetz,* 108 Conn. 26, 31, 142 A. 395 (1928)." *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 196 Conn. 172, 184, 491 A.2d 1084, cert. denied, 474 U.S. 920, 106 S. Ct. 250, 88 L. Ed. 2d 258 (1985).

In this case, the total amount of the liens against the property exceeded its value by approximately $19,850. An additional $7000 in sale expenses, moreover, was likely to be incurred. The court was clearly entitled to consider the entire picture, including the anticipated sale expenses, in exercising its discretion, and to render a judgment of strict foreclosure in order to avoid what in this case would amount to the economic waste of a foreclosure by sale. See *American Bank of Connecticut* v. *Eagle Construction Co.,* 10 Conn. App. 251, 255, 522 A.2d 835 (1987); *Spera* v. *Audiotape Corporation,* 1 Conn App. 629, 633, 474 A.2d 481 (1984). "Having determined the fair market value of the propert[y] and the amount of the [liens], the trial court concluded that strict foreclosure was necessary. There was no abuse of discretion." *Hartford Federal Savings & Loan Assn.* v. *Tucker,* supra.

The state's argument, and that of the dissent, would convert the discretionary determination of the trial court into a *right* of a subsequent lienor to require a foreclosure by sale, as long as the lienor could establish that a sale was likely to yield more than the debt underlying the mortgage being foreclosed. This would be contrary to our well settled law. Id. Indeed, if this case constituted an abuse of discretion, we would be hard pressed to envisage another in which the trial court would be justified in declining to order a foreclosure by sale requested by a second mortgagee.

The state's argument also runs directly counter to General Statutes § 49-31 which provides: "In any action to foreclose a mortgage or lien on any land in which the state, or any officer or agent thereof, claims to have an interest subordinate to that of the party seeking the foreclosure, the state, or such officer or agent, as the case may be, may be made a party defendant, *and such interest may be foreclosed in the same manner and with the same effect as if such interest were held by an individual,* except that no judgment may be rendered against the state or any officer or agent for money or costs of suit." (Emphasis added.) Although at oral argument in this court the state specifically disclaimed any special status, in effect it seeks precisely such a status by its reliance, in the trial court and in its brief in this court, on the claim that it cannot redeem under a strict foreclosure because the legislature has not appropriated funds for such a purpose. This reliance simply ignores the purpose of General Statutes § 49-31.

Unlike the clear policy of General Statutes § 49-31, which is to treat the state no better or worse than an individual lienor, federal law mandates that, when the United States government has a lien on property being foreclosed, absent its consent the lien cannot be extinguished by a strict foreclosure. 28 U.S.C. § 2410 (c); *City Savings Bank* v. *Lawler,* supra, 154. In contrast, our law denies such special status to the state. To accept the state's argument in this case would be to thwart the policy expressed by General Statutes § 49-31. The state's remedy, if any, is to alter its own legislatively declared public policy; it is not for the judiciary to do so.

Implicit in the argument of the state, and of the dissent, is the notion that if a subsequent lienor does not have the ability, even by its own choice, to arrange financing in order to exercise its right to redeem pursuant to a judgment of strict foreclosure, it is entitled to a foreclosure by sale. We know of no such legal prin-

ciple giving rights to impecunious or noncreditworthy lienors greater than to those who may be able to exercise their redemption rights. Nor do the loose dicta of the cases on which the state relies; *City Savings Bank* v. *Lawler,* supra, 158; *New Haven Bank* v. *Jackson,* 119 Conn. 451, 455, 177 A. 387 (1935); *Staples* v. *Hendrick,* 89 Conn. 100, 106, 93 A. 5 (1915); support the establishment of such a principle.

There is no error.

In this opinion DALY, J., concurred.

BIELUCH, J., dissenting. I dissent. The majority opinion supports its conclusion by totaling the gross sum of all liens against the property, without consideration of the respective priorities of the lienholders and the amount of payment that would be available to them upon sale after satisfaction of the first mortgage being foreclosed. "Foreclosure is peculiarly an equitable action . . . ." *Hartford Federal Savings & Loan Assn.* v. *Lenczyk,* 153 Conn. 457, 463, 217 A.2d 694 (1966). The state's entitlement to equitable relief is not correctly determined by the sum total of *all* liens, both prior *and subsequent,* against the property. It is properly measured by the funds which would be available to the state after payment of the prior mortgage being foreclosed in the event of a sale, and that amount in this case would be a considerable recoupment on its security.

The named defendant was defaulted for failure to appear. After the remaining defendants failed to disclose a defense, the plaintiff moved for judgment. The state, however, moved for judgment of foreclosure by sale.

On October 15, 1985, the trial court held a hearing on the parties' motions for judgment. After testimony by an appraiser, the court found the value of the land

and buildings to be $96,750.[1] The court found the first mortgage debt to be $71,996.70, and allowed attorney's fees of $1662.50 and appraisal fees of $650. In addition, costs were taxed at $294.60. The total of such indebtedness was $74,603.80. Accrued taxes were estimated to be approximately $5000. By these findings, the equity for subsequent encumbrancers was in excess of $17,000. The plaintiff argued at trial that in a foreclosure by sale, the committee fees and sale expenses would reduce the equity to $10,000, which the state indicated that it "would gladly take" as the next encumbrancer in order of priority. The state maintained that a strict foreclosure would allow the plaintiff to recover in full its first mortgage indebtedness and, in addition, in excess of the third encumbrance, its attachment, at that time converted to a judgment lien, to the complete exclusion of the state as a prior second encumbrancer. A foreclosure by sale, however, would allow it to recover a substantial portion of its secured indebtedness.[2] In effect, strict foreclosure would give the plaintiff a large windfall by *boxing in* the state.

---

[1] The state does not dispute the reasonableness of this appraisal. At oral argument on appeal, counsel informed this court that the property was sold to a third party on September 18, 1986, for $100,000.

While this appeal was pending, the plaintiff filed a motion in the trial court requesting that it be permitted to sell the property at private sale for $100,000 free and clear of all encumbrances and that the proceeds of the sale be used to pay its mortgage debt, taxable costs and outstanding taxes, with the balance to be held in escrow by the plaintiff for later distribution to the state or to it pursuant to the decision of this court on the correctness of the trial court's judgment of strict foreclosure. The state filed a similar motion. The trial court ordered the private sale on those terms and that a copy of its order be recorded on the land records with the statutory certificate of foreclosure.

In view of the subsequent private sale of the property for $100,000, the actual equity available to the state is in excess of $20,250.

[2] That the plaintiff's argument that there was no equity in the property was circuitous is evident in the following portion of the hearing transcript:

"Mr. Murphy: Your Honor, if you add those three items that you just approved together it comes to $74,603.80 and the per diem by the end of next week it will be close to $75,000. The State is owed $25,000 which makes

The court expressed its view that a judgment of strict foreclosure would not bar the state from recovering any portion of its claim. It asserted that the state had

it $100,000. Taxes run roughly around $5,000, which brings it to $105,000. If a sale were to occur, your Honor, a committee fee must be paid to take priority. Even at five percent it would be—

"The Court: There's no equity, is there?

"Mr. Murphy: There isn't any equity, your Honor.

"Mr. Nagy: If your Honor pleases, what Mr. Murphy neglects to leave out is that the encumbrance directly after the State of Connecticut is the plaintiff. So, if the Court grants a strict foreclosure the bank will be made whole, more or less, and the State of Connecticut will be out a whole lot of money. The State's claim is $20,000. We have no objection to the attorney's fees, to the committee fees, as long as the State of Connecticut as a subsequent encumbrancer realizes a portion, at least, of its encumbrance. It is $25,000. But the difference between the appraisal fee and the debt— the appraisal and the debt is $20,000, your Honor. I think that there is enough there for purposes of protecting subsequent encumbrancers to allow a foreclosure by sale. We have a motion in the file—we have pressed that motion for foreclosure by sale in this matter.

"The Court: In other words, if there's a strict foreclosure you would be out.

"Mr. Nagy: If there's a strict foreclosure we'll be out and the bank will get the first mortgage and they will be covered for the second mortgage that is directly behind the State of Connecticut. That's the important factor here, your Honor. The only other real creditor in this case, subsequent encumbrancer, is the State of Connecticut.

"The Court: You're in the same bank—first and behind the State?

"Mr. Murphy: Your Honor, I don't agree with Mr. Nagy's analysis. If I may be heard on that. Your Honor and I just worked through and got to $110,000 which brings us through to the end of the State's lien.

"The Court: Well, let's say that this thing sold for $95,000. You would get your $74,000 and—

"Mr. Murphy: The committee would—let's say five—so that would be $79,000—let's call it $80,000 because we are at $74,600 as it is. The appraisers—soup to nuts with the sign and so forth would be another $2,000 which brings us to $82,000—and we sold it for $95,000 leaving $10,000—

"Mr. Nagy: Which we would gladly take, your Honor.

"The Court: Which they would get on a foreclosure by sale.

"Mr. Murphy: However, that's not what the law says because the actual encumbrances are $110,000 plus this bank, plaintiff bank, is also a defendant third encumbrancer. So, the encumbrances here are another $12,000. It is $122,000 in encumbrances on an appraisal value of $96,000. The difficulty the State has, your Honor, is that they do not redeem, as a matter of policy. They want to thrust the burden of all of this administrative stuff on the plaintiff so that they can collect a portion of their debt.

## "the right to redeem if you think that it's worth $95,000 and you can sell it for that." The court denied the

"Mr. Nagy: The burden for which the plaintiff is being compensated for out of the proceeds of the sale.

"The Court: If you were not the State of Connecticut there's no question there would be no foreclosure by sale.

"Mr. Nagy: I'm not so sure, your Honor. What you would be doing would be taking away, at least potentially, $10,000 on a sale that would go to a subsequent encumbrancer and giving it to the bank.

"The Court: But he would have the right to bid in, wouldn't he?

"Mr. Nagy: Well, sure he would have the right to bid, but he is a subsequent encumbrancer himself.

"The Court: But, that's how it always works on a strict foreclosure.

"Mr. Murphy: There's no difference here, your Honor, just because it is the State.

"The Court: The State isn't like the Federal Government.

"Mr. Murphy: In fact, they have the wherewithal to come in.

"The Court: I mean, the Federal Government I would have to order a foreclosure by sale.

"Mr. Murphy: There's no statute on this which is why we are here to argue it.

"The Court: And here with the State I don't. So why should the State be treated differently than anyone else?

"Mr. Nagy: Because if there is a sale, your Honor,—the duty of this Court, I believe, is to protect subsequent encumbrances, subsequent creditors. There may be $10,000—

"The Court: But the way they protect themselves is they have the right to bid in. I mean, that's how the strict foreclosure works.

"Mr. Murphy: The Court protects those who protect themselves. Here, in essence what the State is saying, your Honor, is we would like to be protected but we don't want to do anything to accomplish that. We don't want to redeem. I would be delighted if the State were saying, yes, let's go strict and we'll redeem and get what we can. The State is making no guarantees. In fact, they have indicated—

"The Court: You have the right to redeem if you think that it's worth the $95,000 and you can sell it for that.

"Mr. Nagy: But we believe that a strict foreclosure . . . by sale (sic) is strictly to the bank's benefit as first encumbrancer and third encumbrancer.

"The Court: But, you see, I have to take the names the way—just because the bank is third and because you are second shouldn't make any difference. It should be the same as anyone else.

"Mr. Nagy: Well, so the bank is using the leverage they have as third.

"Mr. Murphy: Your Honor, we are not going to recover on the third anyway.

"The Court: I'm going to deny your motion for foreclosure by sale. Strict foreclosure."

state's motion for judgment of foreclosure by sale and rendered judgment of strict foreclosure.

The state filed a motion to open the judgment of strict foreclosure to permit reargument of the court's denial of its motion for foreclosure by sale. At the hearing on this motion, the state argued that it could not redeem, as suggested earlier by the court, because the state has no money allocated for such purposes. The court responded that it was of no consequence that as a practical matter the state does not redeem.[3] The court

---

[3] "Attorney Satti: It was the State's understanding that one of the bases that the Judge used in deciding whether or not a strict foreclosure should enter was that the State would be able to redeem—they are in the position like any other creditor and they could redeem in order to retrieve their money.

"The Court: But we know the State doesn't redeem.

"Attorney Satti: They do redeem. It's not in the budget. There's no money there.

"The Court: But they could redeem.

"Attorney Satti: I guess if the legislature took it upon themselves to meet and appropriate the funds.

"The Court: I mean, I know as a practical matter the State does not redeem but that doesn't really change anything.

"Attorney Satti: Well, the thing is, your Honor, in the event there is a strict foreclosure the bank will receive their money as first mortgagee and as the third priority, a judgment lien, they will also receive that money.

"The Court: All right.

"Attorney Satti: There isn't enough money for the State to obtain any of its money.

"The Court: But you do what any other creditor would do. You have the rights of any other creditor.

"Attorney Satti: But it's not as easy for the State as it would be for another creditor.

"The Court: I went through this once before. I think I heard this same argument, didn't I?

"Attorney Satti: Well, he didn't mention that there is no money in the budget to redeem.

"The Court: I don't care.

"Attorney Satti: If the Judge wants to take—

"The Court: I don't see why the State should be treated any differently than anyone else just because they are the State.

"Attorney Murphy: Your Honor, it is my recollection that Mr. Nagy, who

stated that it did not "see why the State should be treated any differently than anyone else just because they are the State." The court thereafter concluded: "It would be a waste of everyone's time and money to have a foreclosure by sale. So, the motion to reopen is denied."

The state claims on appeal that the court erred in ordering strict foreclosure where the value of the subject property exceeded the plaintiff's debt, including accrued interest, attorney's fees and taxable costs by approximately $22,000 (actually $17,000 after accrued taxes) and where a significant portion of the debt owed to the state could be paid out of the proceeds of a sale even after deduction for further costs of a committee sale.

The state acknowledges that an order of foreclosure by sale is not a matter of right, but rests within the *sound* discretion of the trial court. See General Statutes § 49-24; *Constitution Bank & Trust Co.* v. *Robinson,* 179 Conn. 232, 238, 425 A.2d 1268 (1979); *Bradford Realty Corporation* v. *Beetz,* 108 Conn. 26, 31, 142 A. 395 (1928). It argues, however, that the judgment of the court results in a windfall to the plaintiff.[4] It further argues that a foreclosure by sale would not jeopardize the plaintiff's position which is protected by its priority and the considerable equity in the prop-

was handling the matter for the State at the time, did advise the Court that the State would not be redeeming.

"The Court: I know they never redeem.

"Attorney Murphy: And you Honor's conclusion was just the same as it appears to be at the moment.

"The Court: Yes."

[4] In making this argument, the state points out that the plaintiff has a judgment lien based on a former attachment in the amount of $12,000 against the subject property. This encumbrance is third or next in priority to the second mortgage held by the state.

In actuality, the plaintiff would receive full payment of its third encumbrance and the balance of all equity available above it.

erty over and above the first mortgage debt owed to the plaintiff.

The state contends further that it should not be penalized through the legislatively unavailable expense of redeeming the prior mortgage of the plaintiff in order to realize on its security interest. "[A] foreclosure by sale [gives] the owner of a relatively [smaller] subsequent incumbrance the chance of realizing on his security without first redeeming the [larger] mortgage or lien sought to be foreclosed." *Staples* v. *Hendrick,* 89 Conn. 100, 106, 93 A. 5 (1915). The state argues that while it has the right as a subsequent lienholder to redeem in strict foreclosure, it does not have the legal power to do so. To this extent, the state claims that its position is similar to that of the federal government whose rights may only be foreclosed by a judgment of foreclosure by sale. See 28 U.S.C. § 2410 (c);[5] *City Savings Bank* v. *Lawler,* 163 Conn. 149, 155–59, 302 A.2d 252 (1972).

In denying the state's motion for foreclosure by sale, the court made no finding that there would be no equity left by a sale to pay any portion of the state's claim after satisfaction of the plaintiff's first mortgage debt. The court merely summarily concluded that "[i]t would be a waste of everyone's time and money to have a foreclosure by sale." This was not the exercise of *sound* discretion. Such a conclusion bore no relationship to the equities of the parties before the court, or their opportunity to realize on their respective security interests, the raison d'etre of foreclosure proceedings.

---

[5] "A judgment or decree in such action or suit shall have the same effect respecting the discharge of the property from the mortgage or other lien held by the United States as may be provided with respect to such matters by the local law of the place where the court is situated. However, an action to foreclose a mortgage or other lien, naming the United States as a party under this section, must seek judicial sale." 28 U.S.C. § 2410 (c).

The record indicates that the property was appraised at $96,750. It also demonstrates that the plaintiff's first mortgage, including costs and attorney's fees, totaled $74,603.80. It further appears that approximately $5000 in taxes was also owing on the property. This leaves a balance in excess of $17,000 in equity, minus accrued interest and further expenses in the event of a foreclosure by sale, available to the payment of the state's second mortgage. In argument on the state's motion for foreclosure by sale, even the plaintiff's counsel admitted that a sale of the property for $95,000 in a foreclosure by sale would leave a net equity of at least $10,000[6] available for the state's second mortgage. The court confirmed that this is the amount the state "would get on a foreclosure by sale." To this, the state responded: "Which we would gladly take, your Honor."

"Foreclosure is peculiarly an equitable action . . . ." *Hartford Federal Savings & Loan Assn.* v. *Lenczyk,* supra, 463; *First New Haven National Bank* v. *Rowan,* 2 Conn. App. 114, 118, 476 A.2d 1079 (1984). "The theory of strict foreclosure is that any defendant given a law day may, if he so chooses, redeem the property subject to liens superior to his own. The procedure is designed to insure that a junior lienor will not lose his security interest in the liened property when the worth of the property exceeds the value of the senior liens. *Thus, in theory as well as practice, strict foreclosure is equitable only where the junior lienor has the power to redeem."* (Emphasis added.) *City Savings Bank* v. *Lawler,* supra, 158.

In this case, it is undisputed that the state did not have the legal power to redeem the subject property

---

[6] The plaintiff's counsel incorrectly computed this balance available to the state in the event of a foreclosure by sale at $10,000. By his own calculations, a sale at $95,000, less gross payments and expenses of $82,000, would leave a net balance available to the state for realization of its security interest of $13,000, and not $10,000, to which he apparently rounded off the net figure. See footnote 2, supra.

for lack of legislative budget authority. The trial court erred in finding this inability of no consequence in making its decision to order strict foreclosure. The ability of any party to redeem is a significant factor which the court should consider when deciding to order strict foreclosure. For this reason, the court was incorrect in presumably relying upon General Statutes § 49-31, which provides: "In any action to foreclose a mortgage or lien on any land in which the state, or any officer or agent thereof, claims to have an interest subordinate to that of the party seeking the foreclosure, the state, or such officer or agent, as the case may be, may be made a party defendant, and such interest may be foreclosed in the same manner and with the same effect as if such interest were held by an individual . . . . " This provision does not preclude foreclosure by sale where it would be equitable to allow the state to realize on its security interest.

Had the appellant in this case been a private mortgagee, and not the state, my conclusion would be the same. The equity in the property available to a movant for foreclosure by sale is a factor in measuring the soundness of the court's discretion in allowing a foreclosure by sale. See *Bradford Realty Corporation* v. *Beetz,* supra. The trial court in the exercise of its equitable powers must ensure that the security of a subsequent encumbrancer is realized where possible. "The remedy of the second mortgagee in such a case as this, if he cannot or does not wish to redeem, is by application for an order of sale under the statutes; General Statutes [§ 49-24] et seq.; and we have suggested that one purpose of this statutory remedy was to meet just such a situation as is here present. *Staples* v. *Hendrick,* supra. It is true that the grant of such an application rests in the sound discretion of the court; *Bradford Realty Corporation* v. *Beetz,* [supra]; but *if there is need of a sale to protect the just rights of the parties, we have*

*little fear that the court will not order it."* (Emphasis added.) *New Haven Bank* v. *Jackson,* 119 Conn. 451, 455, 177 A. 387 (1935). The "little fear" that the court will not order a sale to protect the just rights of the parties has been disproven by the trial court's refusal to grant the state's motion for a foreclosure by sale and thereby failing to protect the right of the state to realize a considerable sum on its security interest.

For these reasons, I dissent from the majority opinion and would find that the trial court erred in denying the state's motion for judgment of foreclosure by sale.