The instant appeal was taken by plaintiffs, husband and wife, from defendant board's denial of a variance pertaining to "rear and/or side lot set back requirements" as contained in the zoning regulations of the town of Ridgefield. The order denying the variance, following a public hearing on January 6, 1969, stated that the reason therefor was, "No unusual hardship."
Plaintiffs owned a lot on Cooper Road, Ridgefield, in a residence RAA zone, and occupied a two-room structure thereon as their residence. They contemplated erecting a three-room addition thereto.
Prior to the instant petition, and on July 15, 1968, plaintiffs had applied to the Ridgefield planning and zoning commission, hereinafter called "commission," for a zoning permit to construct the addition. Daniel M. McKeon was chairman of the commission at that date. Plaintiffs represented in their petition that the setback for the side would be 30 feet, while the rear setback line would be 25 feet.
The permit was issued on July 15, 1968, authorizing the addition. Plaintiffs also obtained a building permit and proceeded with construction of the addition. Plaintiffs did not submit a survey or plot plan to the commission in July, 1968, and the commission did not require one as a condition of granting the permit.
When plaintiffs commenced construction, they and their architect relied on a town map of Ridgefield for their conclusion as to the proper location. Plaintiffs further alleged that if any part of their building *Page 33 
violated the rear or side line rule it was due to honest mistake.
When construction was substantially completed, on or about November 20, 1968, plaintiffs were notified by the commission, through a cease and desist order, that the structure was in violation of either the rear or side line requirements. The complaint of violation had been received by the commission in a letter dated November 14, 1968, from Dominic Pascale, an abutting neighbor of plaintiffs. Plaintiffs immediately ordered a survey from John Cahill, a surveyor.
On December 4, 1968, the commission, acting through McKeon, notified plaintiffs that their zoning permit was revoked. As a result, construction was halted, leaving the addition in an unfinished state. The contract price for the addition was $19,250. About 75 percent of the structure had been completed as of the date the work was stopped.
On December 9, 1968, McKeon wrote one of the plaintiffs, Mrs. Ferguson, a letter, alleging a claimed violation of § 5, ¶ B (5), of the Ridgefield zoning regulations, containing a thirty-foot side lot line requirement. McKeon stated in the letter that plaintiffs' addition was merely 22.1 feet from the side line.
Plaintiffs thereupon applied to defendant board for a variance, under date of December 10, 1968. The variance having been denied, their appeal alleged two principal grounds of error: (1) Defendant board exceeded and abused its power, acted illegally and arbitrarily, and unlawfully deprived plaintiffs of the right to use their property in a reasonable and lawful manner, contrary to the General Statutes and the zoning regulations. (2) Defendant board, by allowing McKeon to appear "on behalf of someone else at the hearing," violated § 8-11 of the General Statutes. Therefore, the board's denial of the variance was claimed to be invalid. *Page 34 
Plaintiffs' second claim will be discussed first, since this is deemed to be dispositive of the instant appeal.
The court finds that plaintiffs, as owners of the parcel involved, are aggrieved parties for the purpose of this appeal.
 I
Relative to the conflict of interest claim under § 8-11, plaintiffs' attack is based chiefly on the status and activities of McKeon. McKeon was chairman of the commission, which was the agency adopting and promulgating zoning regulations for Ridgefield. It likewise had certain enforcement powers. His service to the commission, or its predecessor, extended back to 1958. The only witnesses at the board hearing in opposition to the variance were Pascale and McKeon.
McKeon conceded that both Mr. and Mrs. Pascale had contacted him on a number of occasions concerning their objections. The Pascales, as plaintiffs' neighbors, were strongly opposed to granting of the variance.
Peter Green, Mrs. Pascale's father, had been a co-member of the commission and had served with McKeon. McKeon admitted that Green had phoned him with respect to plaintiffs' application. McKeon stated that Green was his "friend."
The cease and desist order against plaintiffs dated November 20, 1968, was issued over McKeon's signature, after a vote of the full commission, at a time when the zoning inspector was not available. McKeon conceded that it was unusual for him to issue an order of this type.
Attorney John Dillman, who represented the Pascales at the board hearing, was a member of a law firm which had performed some legal services for McKeon at a date prior to January 6, 1969. Dillman *Page 35 
also represented him subsequent to the board hearing. When Pascale asked McKeon for suggestions as to an attorney to oppose the variance, Dillman's firm was one of the two or three law firms recommended by McKeon. Pascale, however, made the final selection of his counsel.
McKeon testified that, when Dillman visited the commission's office, prior to the board hearing, to obtain information pertaining to plaintiffs' case, "I helped him, showed him the records that we had in the case." McKeon admitted talking to Dillman concerning plaintiffs' application but denied giving him an "opinion" as to the merits.
McKeon claimed that he attended the board hearing purely as a volunteer and solely because of his feelings that the board should have the information, and records of his commission, pertaining to plaintiffs' case. He carried the commission's file with him and read extracts therefrom to the board.
One of the hotly disputed issues was whether the claimed violation was a side line or rear line matter. McKeon stated to the board that, in his opinion, the facts constituted a side line problem.
McKeon testified that during the approximate ten-year period of his service on the commission he had appeared at the hearings of the board no more than "one or two times." The instant Ferguson hearing constituted one of the two appearances.
 II
Section 8-11 of the General Statutes provides in part as follows: "No member of any zoning commission or board . . . shall appear for or represent any person, firm, corporation or other entity in any matter pending before the planning or zoning commission or board or . . . board of appeals . . . whether or not he is a member of the board or commission hearing such matter." *Page 36 
The fundamental question in connection with the problem of conflict of interest, or similar irregularity, is whether McKeon's appearance before the board on January 6, 1969, while serving as chairman of the commission, was a violation of § 8-11. Phrased somewhat differently, were McKeon's statements and conduct on that night, coupled with his prior activities, such that he must be deemed to have appeared for or represented the Pascales, or their interests, in opposition to plaintiffs' application?
In the court's opinion, the answer must be in the affirmative.
The major decisions involving conflict of interest have been extensively reviewed in the recent case ofSecond Norwalk Corporation v. Planning ZoningCommission, 28 Conn. Sup. 426. Some of the cases deemed to be particularly significant will be referred to hereinbelow.
The leading case on conflict of interest is Low v.Madison, 135 Conn. 1. The court in that case declared invalid a change of zone where one of the members of the commission was the applicant's husband. The court said (p. 5) that it was not necessary to show a "personal pecuniary interest" of the public official in order to meet the disqualification test. The personal pecuniary interest may be only secondarily or incidentally involved. Thus, the court stated (p. 8): "His status forbids the public officer from placing himself in a position where his private interest conflicts with his public duty. The good faith of the official is of no moment because it is the policy of the law to keep him so far from temptation as to insure the exercise of unselfish public interest. He must not be permitted to place himself in a position in which personal interest may conflict with his public duty." *Page 37 
The court further said (p. 9): "Property owners and spectators before a zoning commission are likely to measure the acts of men by the common business standard. However fair these proceedings may, in actuality, have been, it would be difficult if not impossible to satisfy the opponents of this application that they had received a fair and impartial hearing."
Section 8-11 was enacted subsequent to the Low
case and uses the key words "appear for or represent." Defendant cannot avoid the impact of this statute merely by asserting that McKeon did not receive compensation for his appearance, or that he was not officially requested by the Pascales or their agents or relatives to attend.
In Josephson v. Planning Board, 151 Conn. 489, John Denham, a member of the Stamford planning board, participated in a decision to make a change in the master plan which was a prerequisite to reclassification of a fifteen-acre parcel. A sale of the land was contingent upon the rezoning. Denham for twelve years had used free desk space in the office of the real estate broker who negotiated the sale.
The court held (p. 495) that Denham's participation in the zone change rendered it invalid, and concluded that Denham's position "placed him squarely in the status proscribed by the decisions of this court — in a situation tending to weaken public confidence in the proper exercise of the zoning power and in a position where his personal interest might conflict with his public duty. The test is not whether it does conflict but whether it might conflict." (Italics supplied.)
Once again, there was no evidence that Denham had any financial interest whatsoever in the success of the application or that he took any overt action to support the proposal, other than his vote. Nevertheless, the court in Josephson invalidated the amendment on the basis of the mere possibility that *Page 38 
Denham's office association might conflict with his public duty. To the same effect, see Bossert Corporation
v. Norwalk, 157 Conn. 279, dealing with the similar provisions of § 8-21 of the General Statutes; see also Mills v. Town Plan Zoning Commission,144 Conn. 493, 499.
The prohibition of § 8-11 applies whether the official was a member of the board hearing the matter or, as in the instant case, whether he appeared before the board as a witness, agent, attorney, or otherwise, by reason of a substantial personal interest in the victory of one of the parties.
As was stated in Anderson v. Zoning Commission,157 Conn. 285, 290, "[a] personal interest is either an interest in the subject matter or a relationship with the parties before the zoning authority impairing the impartiality expected to characterize each member of the zoning authority. A personal interest can take the form of favoritism toward one party or hostility toward the opposing party; it is a personal bias or prejudice which imperils the open-mindedness and sense of fairness which a zoning official in our state is required to possess."
Indicative of McKeon's personal interest, the initial event of significance was a decision of McKeon's commission, in which he actively participated and approved, leading to a cessation of construction of plaintiffs' residence. This was coupled with frequent contacts and discussions with persons connected with the Pascales as the chief opponents of plaintiffs. Second, McKeon made a voluntary, and almost unprecedented, appearance before the board, as a witness hostile to plaintiffs, without having been requested or ordered to do so by any official of the town of Ridgefield or by any legal process. His testimony before the board was a basic reiteration of his prior opposition to plaintiffs. *Page 39 
Certainly, it cannot be said that his appearance as a witness before the board was characterized by impartiality and lack of bias or personal interest, within the meaning of § 8-11 and the rule of the Anderson case, supra. See Low v. Madison,135 Conn. 1, 7.
The conclusion must be that McKeon's strong personal interest in the Pascales, in addition to his participation in the official action of his own commission, was a substantial factor in causing his appearance as a witness, in opposition to plaintiffs, before the board. In a real and legal sense, this constituted an "appearance" or "representation" within the prohibition of § 8-11.
In Daly v. Town Planning Zoning Commission,150 Conn. 495, the court set aside an amendment to the zoning regulations, as a violation of § 8-11, where a member of the zoning commission voting in favor of the amendment had previously appeared before the zoning board of appeals in support of a variance to the same effect.
The court referred to Low v. Madison, supra, and held (p. 500): "The evil lies not in influence improperly exercised but rather in the creation of a situation tending to weaken public confidence and to undermine the sense of security of individual rights which the property owner must feel assured will always exist in the exercise of zoning power."
In RK Development Corporation v. Norwalk,156 Conn. 369, which is highly pertinent to the instant case, the plaintiff filed an application for a planned residential development with the Norwalk planning commission, which approved it. The Norwalk common council rejected it. Thomas G. Hannon, a member of the council, had appeared in opposition to the development before the commission, with full knowledge that his opposition would later be transmitted to the council. *Page 40 
At the meeting of the council, Hannon abstained from the final vote of disapproval. Further, the record was clear that he did not discuss the application with any members of his political group in the council.
Nevertheless, the court held that the appeal from the disapproval by the council should be sustained because of the prior adversary activities of Hannon, as one of its members, before the commission. The court's decision was based in large part on § 8-21, which is similar in language and effect to § 8-11, including its use of the prohibitory phrase, "appear for or represent any person."
In both RK and the instant case, the officials involved made plain, by either their ruling or their testimony, their interest, preference or favoritism toward one of the litigants, in advance of their appearance or involvement with a different municipal agency which held final powers of decision over the same problem. The conflict of interest exists in both cases, as defined by either § 8-11 or § 8-21. SeeKovalik v. Planning Zoning Commission,155 Conn. 497, 499.
Whatever the facts might disclose in each case, the basic judicial obligation is clear. As stated in Anderson
v. Zoning Commission, 157 Conn. 285, 291, "courts should scrutinize the circumstances with great care and should condemn anything which indicates the likelihood of corruption or favoritism."
The decision as to whether the interest involved is enough to disqualify the official and to invalidate the board's action is a factual one and depends on the circumstances of the particular case. SecondNorwalk Corporation v. Planning Zoning Commission,28 Conn. Sup. 426, 446.
The record contains no evidence that financial considerations led to McKeon's appearance before the board, and no such motivation is imputed to him in *Page 41 
the testimony. It may even be assumed that McKeon believed that he was acting in good faith. Nevertheless, such professions of alleged good faith are not controlling under the present circumstances. Katz
v. Brandon, 156 Conn. 521, 535; Low v. Madison,135 Conn. 1, 8. Section 8-11, in its intent and effect, is prophylactic. See Zell v. Roseland, 42 N.J. Super. 75.
 III
McKeon's official status on the commission, coupled with his participation in its decision, and his personal contacts and associations with plaintiffs' opponents made his appearance before the board a violation of § 8-11. The board's denial of the variance was thereby illegal and invalid.
 Since the ruling on conflict of interest is determinative of this appeal, there is no need to discuss plaintiffs' first assignment of error.
The issues are found for plaintiffs. The appeal is sustained.