[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The dispositive issues in this zoning appeal are (1) whether the defendant zoning board of appeals (board) could sua sponte reconsider and vacate its decision, once that decision had been published, but within the fifteen day appeal period, (2) if so, whether the board could conduct an additional hearing in connection with its reconsideration, and (3) whether the plaintiff is entitled to attorney's fees, pursuant to 42 U.S.C. § 1988, for the deprivation of her civil rights in violation of42 U.S.C 1983. The court holds that the board could reconsider and vacate, within the appeal period, the decision it had previously reached, but that it could not, absent a waiver or consent, conduct an additional hearing after it had once closed hearings and rendered a decision. The court also holds the plaintiff is not entitled to attorney's fees pursuant to42 U.S.C. § 1988. CT Page 3201
The plaintiff is the owner of a parcel of property measuring approximately eight acres and located in a "B" residence zone in the town of Easton. A residence and a detached garage is situated on the property. For many years the plaintiff has maintained several horses on the property.
On January 24, 1991, the zoning enforcement officer of the town of Easton sent a cease and desist order to the plaintiff stating that "[t]he garage building at 114 Center Road is being used for the [c]onduct of a business by person or persons who are not Easton residents and for sleeping quarters by the same persons." The order further stated that such actions violated Article VI and Article IV, paragraph 4.1.1 of the Easton zoning regulations.
The plaintiff appealed the issuance of the cease and desist order to the defendant board. On April 1, 1991 the board held a public hearing on the plaintiff's appeal. At the hearing the plaintiff stated that for some time the second floor of the detached garage had been used on an irregular basis as sleeping quarters for a caretaker of the horses. The plaintiff further stated that the second floor of the garage contained a convertible couch, full bathroom, refrigerator and closet. She explained that the caretaker would sleep in those quarters overnight about three or four times a week.
At the conclusion of the hearing the board tabled the matter until the first week of May. At the plaintiff's request the hearing was rescheduled to June. The hearing resumed and was concluded on June 3, 1991. At the conclusion of the hearing the board voted to "grant the appeal and . . . void or lift the cease and desist order as it currently is stated." On June 6, the chairman of the board wrote to the plaintiff informing her of the board's action and the reason for its action.[1] Notice of the board's decision also was published in a local newspaper on June 6, 1991. On June 7, 1991, the attorney for the board wrote to the zoning enforcement officer stating that he had "read in the newspaper that the cease and desist order has been lifted by the Zoning Board of Appeals. This would appear to conclude the above matter as far as we are concerned and no further action is needed on our part."
On June 17, 1991, the board convened a meeting to reconsider its vote on the plaintiff's appeal. Although no notice of this meeting appears in the record, the plaintiff CT Page 3202 concedes that "the [c]hairman of the . . . [b]oard . . . issued a notice that the [b]oard would convene a special meeting on June 17, 1991 to reconsider its vote on the plaintiff's appeal. . . ." The plaintiff, however, claims that she "was only given five days advance notice of the meeting." While the plaintiff and her attorney attended the June 17th meeting, they submitted a letter objecting to that meeting and refused to participate in it.
At the commencement of the June 17, 1991 meeting the chairman stated that he had called the meeting for two reasons. First, he stated he believed that the board incorrectly had reversed the cease and desist order based on a hardship. Second, the chairman had received a letter from the chairman of the planning and zoning commission. The board voted to "reopen, reconsider the decision that we have rendered a few weeks ago." The board then returned to a discussion of the merits of the appeal. The chairman of the planning and zoning commission was permitted to address the board. The plaintiff's attorney objected to the chairman of that commission addressing the board. At the conclusion of the discussion a member of the board moved to "reaffirm our motion to lift the cease and desist" order. The vote on that motion was three in favor and two opposed. Presumably because General Statutes 8-7 provides that "[t]he concurring vote of four members of the zoning board of appeals shall be necessary to reverse any order, requirement or decision of the official charged with the enforcement of the zoning regulations" both the moving member and a member who had opposed the motion agreed that the motion had been defeated. The notice which the chairman requested be published in the newspaper stated: "C. Sharp, 114 Center Road. Reconsideration of vote to appeal Cease and Desist Order for violation of Article VI and Article IV, section 4.1 FAILED TO LIFT Cease and Desist Order."
General Statutes 8-8 (b) provides that "any person aggrieved by any decision of a board may take an appeal to the superior court. . . ." "`Board' means a . . . zoning board of appeals. . . ." General Statutes 8-8 (a)(2). In an appeal from a zoning board, the court should make a finding of aggrievement. Baccante v. Zoning Board of Appeals, 153 Conn. 44, 45,212 A.2d 411 (1965); Fox v. Zoning Board of Appeals, 146 Conn. 665, 667,154 A.2d 520 (1959). The evidence establishes that the plaintiff is the owner of the subject property. As the owner of the property that was the subject of the board's decision, the CT Page 3203 plaintiff is aggrieved. Winchester Woods Associates v. Planning Zoning Commission, 219 Conn. 303, 308, 592 A.2d 953 (1991); Rogers v. Zoning Board of Appeals, 154 Conn. 484, 488,227 A.2d 91 (1967).
In her brief, the plaintiff claims that (1) the board lacked authority to reconsider and revoke its decision of June 3, 1991, (2) the board's decision to revoke its original granting of the plaintiff's appeal was not supported by the evidence in the record, (3) the decision was illegal because the board received additional evidence after the hearing was closed, (4) the board continued the public hearing beyond the time provided in General Statutes 8-7d, and (5) the board's decision was illegal because the chair of the planning and zoning commission submitted a letter to and personally appeared before the board in violation of General Statutes 8-11. Other claims alleged in the plaintiff's complaint but not briefed are deemed abandoned. Grace Community Church v. Planning Zoning Commission, 42 Conn. Sup. 256, 259, 615 A.2d 1092 (1992). Because the court holds that the board violated General Statutes8-7d(a) in holding an additional hearing when it undertook to reconsider its earlier decision, the appeal must be sustained and the claims of the plaintiff with respect to the merits of the board's action need not be addressed. The plaintiff's claim that the board's action of June 17 deprived her of property without due process of law in violation of theFourteenth Amendment to the Constitution of the United States and that she therefore is entitled to attorney's fees pursuant to 42 U.S.C. § 1983,1988 is addressed infra.
The plaintiff's claim that the board could not reconsider and revoke its decision of June 3 is based on the settled rule of "law of this state which prohibits a zoning board of appeals from reversing its previous decision unless the facts and circumstances which actuated the decision are shown to have so changed as to vitiate or materially affect the reason which produced and supported it. St. Patrick's Church Corporation v. Daniels, 113 Conn. 132, 140, 154 A. 343 [1952]; see also Mynyk v. Board of Zoning Appeals, 151 Conn. 34, 37, 193 A.2d 519
[1963], and cases cited. Consiglio v. Board of Zoning Appeals,153 Conn. 433, 438, 217 A.2d 64 [1966]." Laurel Beach Assn. v. Zoning Board of Appeals, 166 Conn. 385, 387, 349 A.2d 834
(1974). This rule has been applied in the context of successive applications or appeals to a zoning board which, whether or not seeking similar relief or based on similar facts, were CT Page 3204 procedurally distinct. See Grillo v. Zoning Board of Appeals,206 Conn. 362, 367, 537 A.2d 1030 (1988) (successive applications for variances, but condition imposed in connection with the granting of first application did not bar consideration of second application on its merits); Laurel Beach Assn. v. Zoning Board of Appeals, supra (successive applications to the board); Rocchi v. Zoning Board of Appeals 157 Conn. 106, 111,248, 922 A.2d (1968) (successive applications for special exception but second application deemed "substantially changed" from the first); Mynyk v. Zoning Board of Appeals, 151 Conn. 34,37, 193 A.2d 519 (1963) (successive applications for certificate of approval for location of gasoline station); Consiglio v. Zoning Board of Appeals, supra (successive applications for a special exception); Bright v. Zoning Board of Appeals, 149, Conn. 698, 705, 183, A.2d 603 (1962) (successive applications for a variance); Dubriel v. Zoning Board of Appeals, 147 Conn. 517,521, 162 A.2d 711 (1960) (successive applications for certificate of approval for location of gasoline station); Sipperley v. Zoning Board of Appeals on Zoning, 140 Conn. 164,167, 98 A.2d 907 (1953) (successive applications for a variance), overruled in part, Fiorilla v. Zoning Board of Appeals, 144 Conn. 275, 279, 129 A.2d 619 (1952); Middlesex Theatre Inc. v. Hickey, 128 Conn. 20, 22, 20 A.2d 412 (1941); Torello v. Zoning Board of Appeals, 127 Conn. 307, 16 A.2d 591
(1940) (successive applications for variance and to use property for purpose not allowed in zone); Rommell v. Walsh, 127 Conn. 272,276, A.2d 483 (1940) (successive applications for variance); Burr v. Rago, 120 Conn. 287, 291, 180 A. 444 (1935) (successive applications for certificate of approval for location of gasoline station); St. Patrick's Church Corporation v. Daniels, 113 Conn. 132, 137, 154 A. 343 (1931) (successive applications for variance); Fernandes v. Zoning Board of Appeals, 24 Conn. App. 49, 585 A.2d 703, cert. granted,218 Conn. 906-907, 909 (1991) (successive applications for variance but court holding that it was for the board to determine whether second application was substantially the same as first); Grace Community Church v. Planning and Zoning Commission, 42 Conn. Sup. 256,270-71, 615 A.2d 1092 (1992) (successive applications for special permit); Root v. Zoning Board of Appeals 41 Conn. Sup. 218,565 A.2d 14 (1989) (successive applications for variance).
Here, however, there was but one application. The law is clear that the board could have reconsidered and revoked its decision on June 3, at the same session at which it had CT Page 3205 originally acted. Toffolon v. Zoning Board of Appeals,155 Conn. 558, 565, 235 A.2d 96 (1967) ("all deliberative bodies have a right to reconsider their proceedings during a session as often as they think proper, when not otherwise provided by law, and it is the final result only which is to be regarded as the thing done."). Here, the issue is whether the board could, at a later meeting but within the appeal period, reconsider its earlier decision after notice of that decision had been duly published. Applying the rule in Cicala v. Administrator,161 Conn. 362 369-370, 288 A.2d 66 (1971), the court holds that the board could do so.
In Cicala, the plaintiff was a recipient of unemployment compensation benefits. The administrator of unemployment compensation notified the plaintiff that benefits had mistakenly been paid to him during a certain period and, therefore, that he owed money to the unemployment compensation fund. The plaintiff appealed this decision to the unemployment compensation commissioner. The commissioner held hearings on the appeal and, on February 14, 1967, rendered a decision for the plaintiff. On February 27, 1967, the matter was opened on motion of the administrator. Following a delay a further hearing was held. On the basis of new evidence produced at this hearing, the commissioner reversed his earlier decision. On appeal the plaintiff claimed that "the commissioner was not authorized to open his decision for the plaintiff rendered February 14, 1967." Cicala v. Adminstrator, supra, 368.
The Supreme Court disagreed. The court first held that General Statutes 31-248, which at that time provided that "[a]ny decision of a commissioner in the absence of an appeal therefrom . . . shall become final on the fifteenth day after the date of its rendition" did not prohibit the commissioner from opening a prior decision. Cicala v. Administrator, supra, 368-369. Next the court explained that in light of this holding, "the question was whether an administrative officer is authorized between the time his decision is rendered and the time it is final to open that decision and reverse it." Id., 369. Said the court: "`The need for an opportunity for correction of errors, change of mind, or obtaining more adequate factual grounds for a decision is no less present in the case of a decision of . . . [an administrative officer] than in the case of a judgment of a court. The mere filing of a decision confers nothing in the nature of a vested right.'" Id., 370, quoting Lyons v. Delaware Liquor Commission, 44 Del. 304, 318, CT Page 3206 58 A.2d 889 (1948). "In the case at bar the decision of the commissioner could not become final until the appeal time had elapsed. This did not occur. No vested rights intervened and the obvious purpose of the motion to open was not to obtain a new trial but to offer additional evidence to the end that substantial justice might be accomplished. Under these circumstances we cannot say that the granting of the motion to open was erroneous." Ibid.
Cicala, therefore, states that (1) in the absence of a statutory prohibition, (2) an administrative officer may open his decision within the appeal period, (3) for a proper purpose, including the correction of errors, to change his mind, or to obtain a more adequate factual grounds for his decision. The citation by the Cicala court of Lyons v. Delaware Liquor Commission, supra, as well Dylag v. Brennan, 128 Conn. 304, 306,22 A.2d 635 (1941), and Air-Way Branches, Inc. v. Board of Review, 10 N.J. 609, 614, 92 A.2d 771 (1952), makes clear that this rule applies as well to administrative bodies. See generally 73A C.J.S., Public Administrative Law and Procedure, 161. A zoning board of appeals is an administrative body. Perdue v. Zoning Board of Appeals, 118 Conn. 174, 178, 171 A. 26
(1934).
The plaintiff points out that in Cicala the commissioner opened his decision for the presentation of new evidence. Essentially, the plaintiff argues that the broad rule pronounced in Cicala is dicta. "While this is undoubtedly true, it does not diminish the persuasiveness of the legal proposition stated. There is weak dictum and strong dictum. Our Supreme Court has acknowledged that dictum is not binding because it is made `with no intent to lay down in positive form a rule of law.' Sharkiewicz v. Smith, 142 Conn. 410, 412, 114 A.2d 691 (1955). We construe the Supreme Court's language in [Cicala], however, as clearly having an `intent to lay down in positive form a rule of law.'" Sleavia v. Greenwich Gynecology to Obstetrics, P.C., 6 Conn. App., 340, 345-46 505 A.2d 436, cert. denied,199 Conn. 807, 500 A.2d 32 (1986). The refusal of a court to follow such a pronouncement has resulted in reversal. See Fidelity Trust Co. v. Irick, 11 Conn. App. 53, 58, 525 A.2d 551 (1987), reversed, 206 Conn. 484 490-491, 538 A.2d 1027 (1988). Because the proper jurisprudential course for this court is to follow the rule stated in Cicala, it cannot dispose of the case based on the policy arguments which the plaintiff claims undermine that rule. Cf. Montes v. Hartford Hospital, 26 Conn. Sup. 441, CT Page 3207 442-443, 226 A.2d 798 (1966).
Under the rule in Cicala, the board properly reconsidered its earlier decision. Firstly, as in Cicala, there is no statute, including General Statutes 8-7d, expressly prohibiting the opening of a decision by the board. Compare Ierardi v. Commission on Human Rights Opportunities, 15 Conn. App. 569,572-74, 546 A.2d 870, cert. denied 209 Conn. 813, 550 A.2d 1082
(1988), overruled in part on other grounds, Adriani v. Commission on Human Rights v. Opportunities, 220 Conn. 307,317 n. 10, 596 A.2d 426 (1991). Secondly the board's reconsideration was timely, that is, within the fifteen-day appeal period. The board's initial decision was reached on June 3. Notice of that decision was published on June 6. General Statutes 8-8 (b) provides that an appeal to the superior court from a zoning board may be taken within fifteen days from the date that notice of the decision has been published as required by the general statutes. See Bridgeport Bowl-O-Rama Inc. v. Zoning Board of Appeals, 195 Conn. 276, 280, 487 A.2d 559
(1985); Foran v. Zoning Board of Appeals 158 Conn. 331, 336,260 A.2d 609 (1969). On June 17, within that fifteen day appeal period, the board granted the chair's motion for reconsideration of the board's June 3 decision. Accordingly, the board's reconsideration was timely.[2]
Thirdly, the reason for the board's reconsideration was proper, to correct what it genuinely perceived may have been a mistake. The board's June 3 action sustaining the plaintiff's appeal was based on the following reason: "The use of the property as far as presented is for the hobby of keeping horses and for that use it is necessary to keep a person on the premises 24 hours a day. As such that would qualify as a customary and incidental use of the principal use of the property as a residence and as such having someone sleeping over would be acceptable because at this point it is not known if a business is being run. While [sic] it would then be a prohibited use of the premises and then it would not be acceptable to have an individual sleeping over on the premises in the detached building." This reason in turn was based almost verbatim on the "rationale" of the motion to lift the cease and desist order given by board member Fatse. On June 17, when the board met to consider the motion for reconsideration, Fatse explained: "After we made the decision, after further review of the Zoning Regulations it was my personal feeling that we may have put improper reliance on a section of the Regulations which would CT Page 3208 maybe not have governed the situation. The two provisions I am talking about are section 2.1 Article II. Section 2.1 which talks about accessory use which is basically what I had applied to the governing statute the governing regulation in this matter. And Section 4.2.9 which talks about a caretaker[']s residence was a provision that I thought at that time was not relavant [sic] to the situation, but after further deliberation I felt that we needed to reopen the matter, reconsider which provision would have been, which is the governing provision in this matter. And I called upon the Board to reconsider this matter to be discussed further. Which provision should govern Mrs. Sharp's circumstances. . . ."
"There is a presumption that administrative boards of this character have acted `fairly, with proper motives and upon valid reasons. . . .'" Levine v. Zoning Board of Appeals, 124 Conn. 53,57, 198 A. 173 (1938), quoting St. Patrick's Church Corporation v. Daniels, 113 Conn. 132, 139, 154 A. 343 (1931); see also Murach v. Planning Zoning Commission, 196 Conn. 192, 205-206491 A.2d 1058 (1985). Not only has the plaintiff not rebutted that presumption, but the record affirmatively reflects that the board reconsidered its earlier action for proper reasons. Accordingly, because the board's reconsideration of its June 3 decision was timely and for proper reasons, that reconsideration was not illegal.
 II.
The plaintiff next claims that the board's action taken on July 17 was illegal because (1) it violated General Statutes8-11,[3] (2) the board received letters and statements after the public hearing had been closed, (3) the board violated the time requirements of General Statutes 8-7d, and (4) the board purported to conduct multiple public hearings unauthorized by law.
 A.
The following facts are necessary to understand the plaintiff's claim that the board's second decision, on June 17, violated General Statutes 8-11. On or before June 17, 1991, the board received a letter written by the chairman of the planning and zoning commission, Monte Klein, addressed to the chairman of the defendant zoning board of appeals.[4] The gist of the letter was that since the plaintiff owned less than ten CT Page 3209 acres of land, she was prohibited by 4.2.9 of the zoning regulations from using any "outbuilding for any occupancy whatsoever regardless of wheather [sic] or not she is keeping horses as a hobby or a business." For such a use, a variance would be required. The commission chair further opined that under the regulations the plaintiff could "maintain a helper or assistant on the premises provided the person sleeps in the main house." Klein also personally appeared before and addressed the board on June 17. His remarks that day were essentially the same as the statements in his letter.
The text of the letter states as follows:
"Re: Sharp Appeal
Center Road Property
"Dear Mr. Jordan:
"At the meeting of the Easton Zoning Board of Appeals the Cease and Desist Order regarding the above property was lifted by a vote of your commission.
"Kindly note that 4.2.9 of the Town of Easton Zoning regulations provide that a minimum of ten (10) acres is necessary for the inclusion of an outbuilidng for residence or living or occupancy by any person other than the owner. Also note that the only person entitled to occupy the outbuilding is a full time employee employed by the residents of the main building. Further note that the full time employee may not be related to the residents of the main house.
"There is no other provision within the Easton Zoning Regulations for occupancy of any outbuildings.
"With regard to the Sharp application it is my understanding that the property consists of less than ten (10) acres. Hence, Mrs. Sharp is prohibited from utilizing the outbuilding for any occupancy whatsoever regardless, of wheather [sic] or not she is keeping horses as a hobby or a business. In order to vary this prohibition it would be necessary for her to seek a variance from your commission. This has not been done.
"Under the existing rules Mrs. Sharp may maintain a helper or assistant on premises provided that person sleeps in the main CT Page 3210 house.
"I am helpful [sic] that this information will be of assistance to you in your reconsideration deliberations.
Very truly yours,
Monte Klein"
General Statutes 8-11 provides in relevant part: "No member of any zoning commission or board and no member of an zoning board of appeals or of any municipal agency exercising the powers of any zoning commission or board of appeals, whether existing under the general statutes or under any special act, shall appear for or represent any person, firm, corporation or other entity in any matter pending before the planning or zoning commission or board or said board of appeals or any agency exercising the powers of any such commission or board in the same municipality, whether or not he is a member of the board or commission hearing such matter." (Emphasis added.) The plaintiff's claim that the statute was violated and that the board acted illegally is flawed for three reasons.
Firstly, General Statutes 8-11 does not prohibit a member of a zoning board from appearing before another zoning board solely on his own hehalf [behalf]. Massimo v. Planning Commission41 Conn. Sup. 196, 199, 564 A.2d 1075 (1989). Although the plaintiff asserts that Klein was "clearly speaking for the [Planning Zoning] Commission in opposing the appeal" there is, as the board notes, nothing in the record or in the evidence before the court on which the court could properly base such a finding. In general, it is the plaintiff's "burden of proof in showing that the board acted illegally arbitrarily or in abuse of its discretion"; Parish of St. Andrew's Church v. Zoning Board of Appeals, 155 Conn. 350, 360, 232 A.2d 916 (1967); and the plaintiff has not suggested that the burden should be otherwise on this issue. Compare Blaker v. Planning Zoning Commission212 Conn. 471, 479-480, 562 A.2d 1093 (1989) (rebuttable presumption of prejudice from improper ex parte communication); Palmisano v. Conservation Commission, 27 Conn. App. 543, 547,608 A.2d 100 (1992) (same).
Secondly, even if it could be said that Klein wrote and appeared before the board on behalf of the Planning Zoning Commission, no violation of General Statutes 8-11 would have CT Page 3211 resulted. While that statute does, literally, provide that no member of one zoning board "shall appear for or represent any . . . other entity in any matter pending before" his own or another and her zoning board, even if a statute is clear on its face, if a literal interpretation of that statute would lead to absurd results or would not comport with the purpose of the statute, resort to other aids to determine legislative intent is appropriate. State v. Cain, 223 Conn. 731, 744, 744 n. 15-745,613 A.2d 804 (1992).
In Low v. Madison, 135 Conn. 1, 60 A.2d 774 (1948), the Supreme Court declared that members of local zoning boards could not be permitted to use their official power to further their own or other private interests. "Following the declaration of policy in Low v. Madison, the General Assembly gave it legislative support by enacting what is now 8-11 of the General Statutes. . . ." Daly v. Town Plan Zoning Commission, 150 Conn. 495,499, 191 A.2d 250 (1963); see Lake Garda Improvement Assn. v. Town Plan Zoning Commission, 151 Conn. 476, 479,199 A.2d 162 (1964). That is, the legislative intent behind 8-11 was to codify the policy enunciated in Low v. Madison, supra. However, local land use boards represent the welfare of the town as a whole; Adolphson v. Zoning Board of Appeals, 205 Conn. 703, 715,535 A.2d 799 (1988); not the interests of their individual members or other private interests. Munhall v. Inland Wetlands Commission, 221 Conn. 46, 56, 602 A.2d 566 (1992); Rommel v. Walsh, 127 Conn. 16, 21-22, 15 A.2d 6 (1940).
Three factors buttress the conclusion that a representative of a zoning board does not violate General Statutes 8.11 when he appears as that board's representative before another zoning authority. Firstly, a zoning commission has a legitimate public interest in maintaining the integrity of the regulations which `it has promulgated and under which it must function. Cf. Milford v. Local 1566, 200 Conn. 91, 96-98, 510 A.2d 177 (1986); Zoning Board of Appeals v. Planning Zoning Commission, 27 Conn. App. 297,605 A.2d 885 (1992). Secondly our Supreme Court has held that a mayor who is an ex officio member of a planning commission, albeit a nonvoting member (except to break a tie vote), may appear and preside at a commission meeting where he, as the mayor of the city, had submitted the subject application, without violating General Statutes 8-21. Ghent v. Zoning Commission, 220 Conn. 584, 593 600 A.2d 1010 (1991). Said the court in Ghent: "If the plaintiffs' position were sound that the provision of 8-21 relied upon precluded the appearance at a CT Page 3212 public hearing of a mayor, representing solely the interest of the city, simply because he is an ex officio member of the commission involved, that statute would also appear to disqualify the other commission members, who presumably represent the same interest by virtue of their appointment. Such a result, of course, would be absurd." Id., 593. General Statutes 8-21 is substantially similar to General Statutes8-11. Luery v. Zoning Board, supra. The rationale of Ghent was that the mayor represented only the interest of the city. So too does the chairman of a local zoning commission when he speaks on behalf of his commission.
The third reason why the plaintiff's claim under 8-11 must fail is that the Supreme Court has held, in an even more compelling context, that a transgression such as is alleged here is harmless. In Luery v. Zoning Board, 150 Conn. 136,187 A.2d 247 (1962), A.M.F filed an application for a change of zone and for authorization to use the land for a research and experimental laboratory. Id., 137-138. Trudel, a member of the zoning board of appeals and executive vice chairman of the Citizens' Action Council for the Improvement of Stamford "appeared at the hearing before the zoning board and stated that as executive vice chairman of the council he had been instructed to read to the board a written statement which he as executive vice chairman had signed and which stated that the executive committee supported the A.M.F. application and urged favorable consideration of it." Id. 146-147. Said the court: "In appearing before the board in favor of the application, Trudel violated 8-11 of the General Statutes, which prohibits a member of a zoning board or of a zoning board of appeals from appearing before either board on matters pending before them. . . . The plaintiffs are entitled to have the limited finding corrected but since the statute neither makes Trudel's action a crime nor renders the boards' reception of his evidence a reason for denying the application, the correction will not benefit the plaintiffs." (Emphasis added.) Id., 147.
The plaintiff singularly relies on Ferguson v. Zoning Board of Appeals 29 Conn. Sup. 31, 269 A.2d 857 (1970). In Ferguson the chairman of the planning and zoning commission appeared and testified before the zoning board of appeals in opposition to an application for a variance. The court sustained the applicant's appeal on the ground that General Statutes 8-11 had been violated. It is unnecessary to determine whether Ferguson may be reconciled with. Luery v. Zoning Board, supra. In Ferguson, CT Page 3213 the court held that the planning and zoning commission chairman appeared before the zoning board of appeals as the representative of the applicant's neighbors, in opposition to the application, and that he had a personal interest in opposing the application. Ferguson v. Zoning Board of Appeals, supra 36, 38. Nothing of the sort exists in this case.
 B.
The plaintiff next argues that the board's receipt of Klein's letter and statements after the conclusion of the June 3 public hearing were ex parte and hence rendered the board's decision illegal. The court disagrees. The plaintiff's claim is governed by settled principles. "While proceedings before zoning and planning boards and commissions are informal and are conducted without regard to the strict rules of evidence . . . nevertheless, they cannot be so conducted as to violate the fundamental rules of natural justice. Miklus v. Zoning Board of Appeals, 154 Conn. 399, 406, 25 A.2d 637 [1967]. Due process of law requires that the parties involved have an opportunity to know the facts on which the [board or] commission is asked to act, to cross-examine witnesses and to offer rebuttal evidence." Pizzola v. Planning Zoning Commission, 167 Conn. 202, 207,355 A.2d 21 (1974). "The board could not properly consider correspondence submitted after the public hearing without providing the necessary safeguards to the applicant and the public. This means a fair opportunity to cross-examine witnesses, to inspect documents presented and to offer evidence in explanation or rebuttal. Wadell v. Board of Zoning Appeals,136 Conn. 1, 9, 68 A.2d 152 [1949]. Not to do so would deny the applicants the right to be fully apprised of the facts upon which the board is asked to act." Parish of St. Andrew's Church v. Zoning Board of Appeals, 155 Conn. 350, 358, 232 A.2d 916
(1967).[5]
Unlike those cases in which the receipt of post-hearing evidence was found to be reversible error; Blaker v. Planning Zoning Commission, supra; Pizzola v. Planning Zoning Commission, supra; Wasicki v. Zoning Board, 163 Conn. 166,172-173, 302 A.2d 2776 (1972). Palmisano v. Conservation Commission, 27 Conn. App. 543, 608 A.2d 100 (1992); here, the plaintiff was given an opportunity to respond to Klein's statements, an opportunity which she declined. Since the plaintiff was given an opportunity to cross-examine Klein and to respond to his statements there was no illegal receipt of ex CT Page 3214 parte evidence. Michel v. Planning Zoning Commission, 28 Conn. App. 314,332, 612 A.2d 778, cert. denied, 223 Conn. 923, 614, A.2d 824 (1992).
 C.
The plaintiff next claims that by holding its June 17, 1991 meeting the board "exceeded the time limits for completing the public hearing mandated by Connecticut General Statutes 8-7d(a) and constituted an improper second public hearing." The court agrees.
General Statutes 8-7d(a) provides in relevant part that:
 "in all matters where a formal petition application, request or appeal must be submitted to a zoning commission, planning and zoning commission or zoning board of appeals under this chapter and a hearing is required on such petition, application, request or appeal, such hearing shall commence within sixty-five days after receipt of such petition, application, request, or appeal and shall be completed within thirty days after such hearing commences. All, decisions on such matters shall be rendered within sixty-five days after completion of such hearing. The petitioner or applicant may consent to one or more extensions of any period specified in this subsection, provided the total extension of any such period shall not be for longer than the original period as specified in this subsection, or may withdraw such petition, application, request or appeal."
The board does not deny that an appeal to the board from an order of a zoning enforcement officer is a matter "wherein a formal . . . appeal must be submitted to a . . . zoning board of appeals CT Page 3215 under this chapter [124] and a hearing is required on such . . . appeal. . . ." See General Statutes 8-7.
The facts necessary to an understanding of this claim are as follows. The first public hearing on the plaintiff's appeal was held on April 4, 1991. At the conclusion of that hearing, the board, without closing the hearing, tabled the matter until the first week of May. By letter dated April 12, the plaintiff's attorney wrote to the secretary of the board stating: "On behalf of the applicant in the above-reference matter, we would like to request that the hearing for the appeal referenced above be rescheduled for the Board's next regular meeting in June. As you may recall the hearing on this matter had been tabled to Monday May 6. However, Ms. Sharp realizes that she has a scheduling conflict, namely a horse show that she is required to attend for several days during that first week in May." By letter dated April 16 the chairman of the board wrote to the plaintiff stating: "Please be informed that the Zoning Board of Appeals received your offer for an extension in which to complete the Public Hearing on the above mentioned ZBA application. The hearing will continue on June 3. . . ." Thus, within thirty days of the first public hearing on April 4, the plaintiff requested that the continuation of the hearing, scheduled for May 6, be rescheduled to the "next regular meeting" of the board in June. That next regular meeting was on June 3. The hearing was held and was concluded that day. June 3, 1991 was the sixtieth day after the hearing had commenced on April 4. Under General Statutes 8-7d(a) the hearing was required to have been completed "within thirty days" after it had commenced except that the applicant was authorized to consent to an extension provided the extension was for a period of time not greater than thirty days. Since the period of time between May 6 and June 3 is less than thirty days, the plaintiff's consent was within the statute.[6] With this background, we examine Frito-Lay, Inc. v. Planning Zoning Commission, 206 Conn. 565, 538 A.2d 1039 (1988), on which the plaintiff principally relies.
In Frito-Lay, the plaintiff applied to the defendant commission for a special permit. A hearing was held on January 14. "The chairman of the commission specifically declared the public hearing closed at the end of the meeting of January 14. . . ." Id., 656. The commission then tabled the matter to February 11. On February 11 the commission, during a "Citizens Participation" item on its agenda heard comments on the CT Page 3216 plaintiff's application. Most of the fourteen citizens who spoke, were critical of the plaintiff's application. After that portion of the meeting was over, the chairman asked a representative of the plaintiff some questions. The representative answered a large number of questions from commission members. The commission then tabled the application until March 11. "At the outset of the March 11 meeting, the town planner announced that the plaintiff would not be present that night due to a fatality at its plant" and that Frito-Lay had requested an extension until the end of March. Thereafter, another `Citizens Participation,' ensued at which nine persons spoke on the plaintiff's application.
On March 26, the commission held another meeting. At the outset of this meeting, the chairman, "before opening `Citizens Participation,' said that the commission was limiting discussion based on the information that [had] been gathered at the public hearing, so any comments that the citizens want[ed] to make regarding Planning Zoning, should not [sic] relate to the matter before us this evening." (Emphasis in original.) Id., 558. Nonetheless, fourteen other citizens spoke on the application most of whom were opposed. The plaintiff's counsel objected to allowing an attorney for an opponent to the application to speak, "although he also said that he had no objection to members of the public speaking. After all of the members of the public had spoken the chairman asked if anyone from Frito Lay wished to make a comment. [The plaintiff's plant engineer] indicated that, given the chairman's earlier ruling Frito-Lay had elected not to comment." (Footnote omitted.) Id., 559. Immediately thereafter the commission discussed the plaintiff's application and voted to deny it by a vote of three-to two.
On appeal, Frito-Lay claimed, inter alia, that "the commission's disregard of the mandatory hearing procedures made the commission's March 26 vote after the illegal proceedings of February 11. . . , March 11. . . , and March 26. . . , a nullity." The Supreme Court held that those proceedings indeed were "hearings" and that "[a]fter the hearing of January 14 . . . was held and closed on that date, there could be no further `hearings' on Frito-Lay's application that would be permitted under the enabling statutory scheme on zoning." Id., 568. The court also did "not agree with the defendants' argument that at the March 26 . . . hearing, Frito-Lay waived its right to object to any of the citizen's comments because its counsel listened without CT Page 3217 objection while "citizens made their point about the [Frito-Lay] facility," but only objected when [an attorney for an opponent] began to speak. Id., 572. One of the two reasons why the court disagreed with the defendants' claim of waiver was that "Frito-Lay fairly viewed this as a `hearing' beyond the thirty-day limit and this was consistent with its position that its count went only to the extension of the sixty-five day limit for decision and not to any new hearing." Ibid. The court then held that notwithstanding the commission's illegal holding of multiple hearings, automatic approval of the plaintiff's application was not mandated. Id., 574. Rather, the court sustained the plaintiff's appeal and remand[ed] this entire matter to the commission for a new hearing in accordance with law. See Thorne v. Zoning Commission, 178 Conn. 190, 206,423 A.2d 861 (1979); Bogue v. Zoning Board of Appeals, 165 Conn. 749,753-54, 345, A.2d 9 (177). . . ." Id., 575.
In this case, after voting on June 17 to reconsider its earlier decision, the board readdressed the merits of the plaintiff's appeal. After extensive discussion among the board's members the chairman asked the plaintiff's attorney if he had any comment. The plaintiff's attorney responded: "I do not think I have authority to say other than I don't think you've made this meeting appropriate. I think you made a decision and I consider it inconsiderate." The chair then invited the planning and zoning commission chairman to speak. He accepted the invitation:
"Well, thank you for the opportunity to speak. Our regulations provide several apperatuses [sic] for a resident of Easton to use. The cease and desist here was issued not because there was fear that a business was taking place. And the fact that it may or may not be a hobby had no bearing whatsoever. It was done because the zoning enforcement officer found a violation of the regulations. And the regulations clearly provide that if you have less than 10 acres you have a one family residence. You may not under any circumstances on less than 10 acres use an outbuilding for anybody to use as a residence, occupancy or breaking it down to it's most basic simplicity to spend a night there. It's not for sleeping or for any purposes. If it's over 10 acres then you are allowed to utilize an outbuilding and I use the word outbuilding so we don't get it confused with an accessory apartment. Outbuilding, an additional building for, as regulation 4.2.9 spells out, a full time employee of the resident owner. And then again this issue has arisen whether CT Page 3218 that employee can be a relative of the owner and the regulation provides that it can't. Mrs. Sharp has several alternatives. There's several things that she can do so that there is no hardship created. And alternative 1 is obviously if she wants to keep this person caring for the horses she can have that person come and stay in the house with her. And the whole problem goes away. Solution 2 is she can come to this commission and ask that you waive or vary that regulation and allow her to maintain occupancy of an outbuilding on less than 10 acres, which you might be willing to do. However under the circumstances she has chosen to do neither of those and zoning enforcement officer had maintained she has broken the rules by having somebody in an outbuilding on a piece of property on less than 10 acres which this is a clear violation of 4.2.9. And I think this is really what you have before you. Thank you for the opportunity."
Immediately thereafter the plaintiff's attorney said: "I wouldn't like to add any more evidence because I don't think this is a public hearing but I would like to object to the Chairman's colloquy. I don't think there's any cause for additional evidence submitted after the public hearing has been closed. And so I just want to register my objection."
In order to determine whether the board violated General Statutes 8-87d(a) the court, as in Frito-Lay, supra, 567, must determine "the legal effect" of the proceeding of January 17. Quoting Rybinski v. State Employees Retirement Commission,173 Conn. 462, 378 A.2d 547 (1977), the Frito-Lay court stated "that [a] hearing can be a proceeding in the nature of a trial with the presentation of evidence, it can be merely for the purpose of presenting arguments, or . . . it can be a combination of the two. . . . only does a hearing connote an adversarial setting, but usually it can be said that it is any oral proceeding before a tribunal. . . . Our cases consistently recognize the generally adversarial nature of a proceeding considered a hearing in which witnesses are heard and testimony is taken. See e.g. . . . Armstrong v. Zoning Board of Appeals, 158 Conn. 163,257 A.2d 799 [1969] (public hearing, zoning commission heard evidence and arguments); Kleinsmith v. Planning Zoning Commission, [157 Conn. 303, 311, 254 A.2d 486 (1968)] (hearing to permit interested persons `to express their views.') (Emphasis added in part and in original in part.) See also Gervasi v. Town Planning Zoning Commission, [184 Conn. 450, 440 A.2d 163 (1981)]; Colonial Trust Co. v. Austin, 133 Conn. 696, 699 54 A.2d 503
CT Page 3219 (1947)." (Emphasis added; internal quotation marks omitted). Frito-Lay, Inc. v. Planning Zoning Commission, supra, 567-568; cf. Blaker v. Planning Zoning Commission, 212 Conn. 471,562 A.2d 1093 (1989) (ex parte communication related to a "procedural question" proscribed by the rule of Pizzola, supra). Applying these principles, the court concludes that what occurred on June 17 when Klein orally addressed the board at its chairman's invitation was a "hearing". After the board's hearing on June 3, the hearing phase of the plaintiff's application had been closed as evidenced by the ensuing vote. The additional hearing on June 17 was beyond the time limit prescribed by General Statutes 8-7d(a) and, therefore, was illegal.
 III.
Two remaining claims of the plaintiff may be combined and disposed of in accordance with the same analysis. The plaintiff claims that the board's reconsideration and revocation of its earlier decision deprived her of property without due process of law thereby entitling her to attorney's fees under 42 U.S.C. § 1988
for a violation of her civil rights under 42 U.S.C. § 1983.
Section 42 U.S.C. § 1983 provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected . . . any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . or other proper proceeding for redress." Section 1988 of the same title, 42, of the United States Code provides that "in any action or proceeding to enforce a provision of [section] . . . 1983 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."[7]
The first part of the plaintiff's claim embodies the first element of a civil rights action under 42 U.S.C. § 1983; that is, the plaintiff claims that she was deprived of a right secured by the constitution or by the laws of the United States. Ruggiero v. Krzeminski, 928 F.2d 558, 562 (2d Cir. 1991); Gorra Realty, Inc. v. Jetmore, 200 Conn. 151, 165, 510 A.2d 440 (1986). The right of which she claims to have been deprived is property. Specifically, the plaintiff claims that she had a property right CT Page 3220 to the permit she was granted on June 3. While the Constitution of the United States, in the Fourteenth Amendment thereto, guarantees the right not to be deprived of property without due process, "[p]roperty interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . . . Cleveland Board of Education v. Loudermill, 470 U.S. 532, 538, 105 St. Ct. 1487,84 L.Ed.2d 494 (1985), quoting Board of Regents v. Roth, [408 U.S. 564,577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)]; see also Paul v. Davis, 424 U.S. 693, 709, 96 St. Ct. 1155, 47 L.Ed.2d 405, reh. denied, 425, U.S. 985, 96 St. Ct. 2194, 48 L.Ed.2d 811
(1976). The hallmark of property . . . is an individual entitlement grounded in state law which cannot be removed except for cause. Logan v. Zimmerman Brush Co., 455 U.S. 422, 430
102 St. Ct. 1148, 71 L.Ed.2d 265 (1982)." (Internal quotation marks omitted; emphasis added.) Connecticut Education Assn. v. Tirozzi,210 Conn. 286, 294, 554 A.2d 1065 (1989).
In Cicala v. Administrator, supra the, court held that where an administrative body properly vacated a decision within the applicable appeal period "[n]o vested rights intervened. . . ." Id., 320. "It is essential to constitute a vested right in contradistinction to one that is expected or contingent, that the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest." (Emphasis added.) Bryant v. Hackett, 118 Conn. 233,241, 171 A. 664 (1934); see Hagerty v. Administrator, 137 Conn. 129,133, 75 A.2d 406 (1950); Siller v. Siller, 112 Conn. 145,151, 161 A. 524 (1931). Since the board properly and timely vacated its decision, the plaintiff did not have a vested right and hence did not have a property right in that decision. See also Graham Corporation v. Board of Zoning Appeals, 140 Conn. 1,4-5, 97 A.2d 564 (1953), and cases collected therein, holding that there is no vested right in a building permit; cf. Kelley Property Development Inc. v. Lebanon, 226 Conn. 315, 322-23,627 A.2d 909 (1993), and Red Maples Properties v. Zoning Commission,222 Conn. 730, 738-39, 610 A.2d 1238 (1992), discussing and applying the "clear entitlement" test for determining whether a civil rights claimant in a land use regulation case has stated a due process claim under the federal constitution.
Despite the plaintiff's importuning to address the merits of her appeal and to direct a judgment accordingly, as in Frito-Lay "we have determined that because the [board] did act CT Page 3221 illegally, we should go no further than to sustain [the plaintiffs's] appeal and remand this entire matter to the [board] for a new hearing in accordance with law. See Thorne v. Zoning Commission, 178 Conn. 198, 206, 423 A.2d 861 (1979); Bogue v. Zoning Board of Appeals, 165 Conn. 749, 753-54345 A.2d 9 (1974); see 4 R. Anderson, American Law of Zoning (3d. Ed)27-39, p. 601." Frito-lay Inc. v. Planning Zoning Commission, supra. "When, on a zoning appeal, it appears that as a matter of law there was but a single conclusion which the zoning authority could reasonably reach, the court may direct the administrative agency to do or refrain from doing what the conclusion legality requires. [citations omitted.] In the absence of such circumstances, however, `the court upon concluding that the action taken by the administrative agency was illegal, arbitrary or in abuse of its discretion should go no further than to sustain the appeal taken from its action. For the court to go further and direct what action should be taken by the zoning authority would be an impermissible usurpation of the administrative functions of the authority.'" Thorne v. Zoning Commission, supra, 206.
The gist of the plaintiff's claim that she is entitled to a judgment directing that the board sustain her appeal is that the "part time, irregular use of an accessory building for sleeping quarters by a caretaker of horses on an eight acre parcel of property in Easton was a customary accessory use." To prevail, the plaintiff must overcome two major hurdles. Firstly, the plaintiff must establish that, as a matter of law, maintaining horses on property in Easton is a permitted or accessory use in a B residence zone, even though, as she concedes such a use is not specifically listed in the regulations. Secondly, she must establish that the use of living quarters in a garage for the caretaker of those horses — at whatever frequency the board finds existed here — is an accessory use to the maintenance of horses. At the very least, these determinations are fact-intensive and call for the exercise of legal discretion by the board; Lawrence v. Zoning Board of Appeals, 158 Conn. 509,513-14, 264 A.2d 552 (1969); not by the court acting as a super zoning authority. "Such a determination is one peculiarly within the knowledge of the local board." Id., 514.
The appeal is sustained.
BY THE COURT, CT Page 3222
BRUCE L. LEVIN, JUDGE OF THE SUPERIOR COURT